**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

ELISE J.,[1]
    Plaintiff,

        v.                                          Civil No. 3:22-cv-00440-DJN

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,
    Defendant.

### REPORT AND RECOMMENDATION

Plaintiff commenced this pro se action pursuant to 42 U.S.C. § 405(g), challenging the decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA"), which granted Plaintiff's application for auxiliary child's insurance benefits, but found that Plaintiff was not entitled to them prior to October 2018. (ECF No. 1.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Plaintiff moved for summary judgment on August 29, 2022 (ECF No. 10) ("Pl.'s Mem.") and Defendant filed a cross-motion for summary judgment. (ECF No. 11) ("Def.'s Mem.") The parties have fully briefed the issues, which has rendered the matter ripe for review.[2] Having reviewed the parties' submissions and the record in this case, and for the reasons set forth below, the Court

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

1

RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 10) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 11) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On July 14, 2009, Plaintiff's father, Franklin J., filed an application for retirement benefits and listed Plaintiff as a child who might be eligible for benefits. (R. at 33-34.) The SSA subsequently mailed a letter to Franklin J. at the address listed on his application,[3] awarding him social security benefits beginning October 2009. (R. at 37-38.) The SSA maintains that, thereafter on November 4, 2009, it issued a closeout notice ("Closeout Notice") to Franklin J., notifying him that Plaintiff and her minor brother[4] were eligible for child's auxiliary insurance benefits and, if an application for such benefits was filed within six months of the Closeout Notice, the SSA would use February 9, 2009, as the filing date. (Def.'s Mem. at 2-3; *see* R. at 76-77.)

Approximately ten years later (i.e., May 2, 2019), Plaintiff's mother filed an application on Plaintiff's behalf,[5] which was well outside the six-month window from the Closeout Notice. (R. at 42-43.) The SSA granted Plaintiff's application and issued an award retroactive to October 2018. (R. at 52.) Plaintiff received an initial lump sum payment of $8,757.00 for October 2018 through

---

[3] The Court declines to disclose the mailing address material to the claims in this case, but notes that the parties agree that it is the only address listed on Franklin J.'s application, dated July 14, 2009, and is Plaintiff's primary mailing address. (*See* R. at 33; Pl.'s Mem. at 2-3; Def.'s Mem. at 2-3.)

[4] The parties agree that Plaintiff's brother was initially eligible to receive auxiliary benefits but was over age eighteen at the time of Plaintiff's application and has subsequently "chosen not to pursue any type of appeal" for an award of retroactive benefits. (Pl.'s Resp. Opp. Def.'s Mot. Summ. J. at 1-2 (ECF No. 13) ("Pl.'s Reply"); R. at 18; Def.'s Mem. at 2 n.2.)

[5] Plaintiff was a minor at the time of her application but turned eighteen prior to commencing the present action.

April 2019 and was notified that she was entitled to $1,261.00 in monthly payments thereafter. (R. at 49, 74.) On May 6, 2019, Plaintiff's mother moved for reconsideration, arguing that Plaintiff was entitled to receive benefits dating back to 2009. (R. at 53.) Plaintiff's mother explained that neither she nor Franklin J. received the Closeout Notice informing them of Plaintiff's eligibility. (R. at 48.)

On June 10, 2019, the SSA denied Plaintiff's request for reconsideration. (R. at 53-54.) Plaintiff's mother requested a hearing before an administrative law judge ("ALJ"), and on January 11, 2021, Plaintiff and her mother testified telephonically. (R. at 55, 57, 14-31.) On January 27, 2021, the ALJ issued an unfavorable decision and determined that Plaintiff was not entitled to child's insurance benefits prior to October 2018. (R. at 12.) On May 9, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. (R. at 1-5.)

## II. APPLICABLE LAW

Under Title II of the Social Security Act (the "Act"), the child of an individual entitled to social security benefits may receive child's auxiliary insurance benefits. 42 U.S.C. § 402(d). However, to be eligible for these benefits, the child must file an application for child's insurance benefits, *id.* § 402(d)(1)(A); 20 C.F.R. §§ 404.350(a)(3), 404.603, which must be on a form and in a manner prescribed by the SSA. 20 C.F.R. § 404.610. Further, "[i]t is the date on which the application is filed, and not the date on which the claimant is ultimately determined to be eligible, that triggers [her] entitlement to benefits under the Act." *Wright v. Califano*, 603 F.2d 666, 671 (7th Cir. 1979); *see* 42 U.S.C. § 402(d)(1)(C)(iii). However, the effective date of a written application may be established before its actual filing by a "protective filing." A protective filing is made by taking such steps as listing the child's name on the parent's application. Program Operations Manual System, GN 00204.010(C)(3) ("Naming a child on a Title II application

3

establishes a protective filing for the child."). Pursuant to the SSA's regulations, once the SSA receives a written statement of intent to claim benefits, it will send a closeout notice to the claimant "advising of the need to file an application." 20 C.F.R. § 404.630(c). The claimant must then file a formal application within six months of the date of the SSA's notice in order to preserve the protected filing date. *Id.* The regulations are silent on the impact of the SSA's failure to send or the claimant's failure to receive the notice identified in 20 C.F.R. § 404.630(c).

At the time of the application, the parent must be entitled to old-age benefits and any non-disabled child must be dependent upon the parent and must be under the age of eighteen or be a full-time elementary or secondary school student under the age of nineteen. *Id.* An eligible child applicant may receive retroactive benefits for up to six months prior to the protective filing date. 42 U.S.C. § 402(j)(1)(B). Thus, "[f]iling a written application is a 'substantive condition' to receiving child's insurance benefits, even 'when the applicant is a minor seeking retroactive benefits.'" *Shepherd ex rel. Shepherd v. Chater*, 932 F. Supp. 1314, 1317 (D. Utah 1996) (quoting *Johnson v. United States*, 572 F.2d 697, 698 (9th Cir. 1978)); *see also Schweiker v. Hansen*, 450 U.S. 785, 790, 101 S. Ct. 1468, 67 L. Ed. 2d 685 (1981) (*per curiam*) ("Congress expressly provided in the Act that only one who 'has filed application' for benefits may receive them, and it delegated to petitioner the task of providing by regulation the requisite manner of application. A court is no more authorized to overlook the valid regulation requiring that applications be in writing than it is to overlook any other valid requirement for the receipt of benefits.").

### III. STANDARD OF REVIEW

#### A. Liberal Construction of Pro se Pleadings.

The court "has an obligation where the petitioner is pro se . . . to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026,

1027 n.1 (9th Cir. 1985) (en banc); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) (per curiam); *Laber v. Harvey*, 438 F.3d 404, 413 (4th Cir. 2006); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Indeed, the Supreme Court has held that pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Nonetheless, a pro se complaint is still subject to dismissal even under this less stringent standard. *Id.* at 520-21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).

However, a court need not attempt "to discern the unexpressed interest of the plaintiff" nor overlook a clear failure in the pleading to allege a federally cognizable claim. *Laber*, 438 F.3d at 413; *see also Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390-91 (4th Cir. 1990). As explained by the Fourth Circuit, the liberal construction of a pro se complaint does not require district courts to "conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985).

"This Court generally decides appeals under the [Act] by considering the issues raised and argued in a plaintiff's brief. Courts are not required to guess as to grounds for an appeal, nor are they obliged to scour an evidentiary record for every conceivable error." *Ricks v. Comm'r of Soc. Sec.*, No. 2:09-cv-622, 2010 U.S. Dist. LEXIS 142966, 2010 WL 6621693, at *7 n.7 (E.D. Va. Dec. 29, 2010) (quoting *Womack v. Astrue*, No. CIV-07-167-W, 2008 U.S. Dist. LEXIS 47579, 2008 WL 2486524, at *5 (W.D. Okla. June 19, 2008)). However, when deciding a social security matter on the merits, a reviewing court should still "scrutinize the record as a whole to determine whether the conclusions reached are reasonable, and whether the hearing examiner applied correct

5

legal standards to the evidence." *Id.* (internal quotations omitted). A claimant's failure to raise an error does not obviate the court's duty to correct blatantly obvious prejudicial errors. Therefore, the undersigned will nonetheless conduct a review of the record to ensure the ALJ made no clear error of law, and that substantial evidence supports the decision.

  **B.**   **Substantial Evidence Standard.**

  A factual determination by the Commissioner must be upheld if it is supported by substantial evidence. Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

## IV. ANALYSIS

  Plaintiff maintains that she should receive child's auxiliary benefits dating back to 2009 because she did not receive the Closeout Notice, dated November 4, 2009, from the SSA. (Pl.'s Mem. at 2; Pl.'s Reply at 2-3.) Plaintiff argues that her application for benefits should not be subject to the six-month retroactivity payment period because: (1) her parents never received the

Closeout Notice advising them of Plaintiff's entitlement to auxiliary benefits; and (2) the SSA failed to inform her parents of Plaintiff's entitlement to auxiliary benefits during field office visits at the time of Franklin J.'s application. (Pl.'s Mem. at 1; R. at 20, 22.)

As to the first point, Plaintiff explains that her family "sometimes receive[s] mail addressed to [their] neighbors by mistake, and also mail from a gentleman who lives near [them] with a very similar name and address." (Pl.'s Mem. at 2) (emphasis omitted.) Indeed, during the administrative hearing, Plaintiff's mother explained how the mail delivery service in her area was inconsistent and gave examples of how she often received mail belonging to a neighbor with the same first name of her husband, and vice versa. (R. at 25-26.) She added that the SSA "never mentioned that [her] children were eligible" when she and her husband presented to the SSA field office to file his application in 2009, but that she first became aware of Plaintiff's eligibility in early 2018. (R. at 20.) Consequently, she contacted her local SSA field office in April 2018 to inquire about child auxiliary benefits for Plaintiff on Franklin J.'s record, which established a protected filing date of April 8, 2019. (R. at 19, 21.) During a visit to the office, Plaintiff and her mother were shown a copy of the Closeout Notice, allegedly for the first time, which properly listed Plaintiff's mailing address. (R. at 19.) Plaintiff claims that the SSA field office staff "strongly urged" her to appeal for "past benefits that would have legally and ordinarily been awarded." (Pl.'s Reply at 2.) Plaintiff contends that, had her parents received notice of her eligibility for auxiliary child benefits, they "certainly would have filed in a timely manner to help raise [her] and save for [her] college tuition, etc." (Pl.'s Mem. at 2.) Plaintiff acknowledges that, while "the law was followed in 2019 and [she] received six months of back benefits[,]" she contends that "it hardly compares to the years and years of benefits" she would have received had she and her parents known that she had to file an application for them. (Pl'.s Reply at 3.)

7

Defendant responds that Plaintiff is not entitled to receive benefits beginning in 2009 because no application for benefits was filed on her behalf at that time. (Def.'s Mem. at 6.) According to Defendant, Franklin J.'s application, dated July 14, 2009, established a protective filing date, which triggered the Closeout Notice to the claimant "advising of the need to file an application." (Def.'s Mem. at 7, citing 20 C.F.R. § 404.630(c).) Subsequently, a "claimant must then file a formal application within six months of the date of the closeout notice to preserve the protective filing date." (Def.'s Mem. at 7, citing 20 C.F.R. § 404.630(c).) In this case, Plaintiff failed to file the formal application within six months of the date of the Closeout Notice, which "closed out Plaintiff's July 14, 2009 protective filing date in accordance with its policies." (Def.'s Mem. at 8, citing R. at 12.) Because "there is no provision to extend the closed-out protective filing date for good cause (or otherwise)," Plaintiff is not entitled to benefits retroactively to 2009. (Def.'s Mem. at 8.) As a result, Defendant contends that "[t]he ALJ's decision enjoys the support of substantial evidence and comports with law" and this "Court should affirm." (Def.'s Mem. at 9.)

In his decision, dated January 27, 2021, the ALJ applied Section 202(d)(1) of the Act, 42 U.S.C. § 402(d)(1), to determine when Plaintiff was entitled to receive child's auxiliary benefits. (R. at 12.) The ALJ noted that Franklin J. "was informed with his July 14, 2009 application that he had two children under the age of [eighteen] at the time who may be eligible for Social Security Benefits on this record" and that the "protective filing close out date [was] six months after the benefit [C]loseout [N]otice of November 4, 2009." (R. at 12.) The ALJ further explained that Plaintiff's application for benefits was filed on May 2, 2019, which was granted on May 7, 2019 with retroactive benefits awarded back to October 2018. (R. at 12.) He acknowledged Plaintiff's reasons for filing the application on May 2, 2019, namely, that Plaintiff's mother "indicated that she never received the [Closeout Notice] advising of the need to file applications for [Plaintiff and

8

her brother]." (R. at 12.) The ALJ wrote: "[s]he claim[ed] that the mail service is subpar at their home address and that they would have applied had they know [sic] they were due benefits for their children." (R. at 12.)

Nonetheless, the ALJ determined that "[t]he law in this case is clear that a child's benefit application can only be processed when filed." (R. at 12.) As a result, the ALJ concluded that, because Plaintiff's "May 2, 2019 child's benefits application was properly processed, [] the earliest that [Plaintiff] [was] entitled to retroactive benefits [was] October 2018." (R. at 12.) Accordingly, the ALJ found that "[t]he May 7, 2019 determination is proper under [SSA] law and applicable regulations and is hereby affirmed." (R. at 12.)

In this case, there is no dispute that Franklin J. triggered the protections of 20 C.F.R. § 404.630 when he listed his children on his application for retirement benefits, and that Plaintiff did not submit an application for child's auxiliary benefits until May 2, 2019. (Pl.'s Reply at 1; Def.'s Mem. at 1; R. at 42-43.) The only issue is whether Plaintiff was entitled to a proactive award of benefits based on her alleged non-receipt of the Closeout Notice.

The Court finds that the ALJ's application of the statutory limit on retroactive benefits is supported by substantial evidence. First, neither the Act nor any applicable statute, regulation, or internal administrative procedure provides an equitable remedy for a claimant who fails to apply for benefits earlier due to the non-receipt of the Closeout Notice because of a mail delivery error. Second, Plaintiff does not advance the argument that she failed to apply earlier based on misinformation from the SSA, and the Court finds no evidence that such misinformation occurred in this case. Third, the Court notes that Congress clearly intended to limit retroactive awards of benefits when it promulgated 42 U.S.C. 402(j)(1)(B) by explicitly limiting retroactive benefits to "the end of the sixth month immediately succeeding" the application date. Given such a mandate,

and in light of no exception indicating otherwise, the Court is restrained by the law to conclude that Plaintiff is not entitled to retroactive benefits dating to 2009 on the basis that she and her family did not receive the Closeout Notice. Indeed, Franklin J. was the individual applying for his own benefits, and he was the one who listed Plaintiff as a child who may be eligible for benefits. The SSA reasonably sent the Closeout Notice to him, a copy of which was included in the record before the ALJ, and there is no binding law indicating that the SSA needed to send the Closeout Notice via certified mail or request a confirmation of its receipt. Moreover, even if Franklin J. was not the proper applicant –which he was – the Closeout Notice was still sent to Plaintiff's last known, and current, address, since Franklin J.'s address was the only address the SSA had for him. Regrettably, Plaintiff did not apply until May 2, 2019, long after the SSA closed out Plaintiff's July 14, 2009 protective filing date. Accordingly, Plaintiff is entitled to benefits no earlier than October 2018. As discussed above, the ALJ duly noted Plaintiff's allegations and evaluated them pursuant to the regulations governing the award of child auxiliary benefits. As a result, the Court finds no reversible error, and further finds that substantial evidence supports the ALJ's decision in this matter.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 10) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 11) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record, and forward a copy to United States District Judge David J. Novak. The Clerk is further directed to mail a copy of this Report and Recommendation to the pro se Plaintiff at her address of record.

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

/s/ *MRC*
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: May 30, 2023